# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BILLY RAY FRANKLIN, | ) | |
| | ) | **ORDER,** |
| Petitioner, pro se, | ) | **MEMORANDUM OPINION** |
| | ) | **AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | 1:10CV31 |
| | ) | 1:07CR428-2 |
| Respondent. | ) | |

Petitioner Billy Ray Franklin, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docket no. 380)[1], two motions to amend it (docket nos. 400, 425), and a motion to seal his second motion to amend and associated documents (docket no. 426). Respondent has filed a response to the original Section 2255 motion and the first motion to amend (docket no. 421). Although Respondent has not responded to the second motion to amend, none is necessary because it is really only an extension or expansion of claims raised in Petitioner's first motion to amend. All of Petitioner's motions are now before the court for decision.

## BACKGROUND

Petitioner was indicted in a superseding indictment along with eighteen other defendants as part of a conspiracy to manufacture and distribute methamphetamine (docket no. 109). The charges against him were one count of conspiring to distribute

---

[1] This and all further cites to the record are to the criminal case.

methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), one count of maintaining a dwelling for drug purposes in violation of 21 U.S.C. § 856(a)(1) and (b), and one count of possessing items to manufacture a controlled substance in violation of 21 U.S.C. § 843(a)(6) and (d)(2). He pled guilty to the conspiracy charge before being sentenced to 188-months imprisonment (docket nos. 156, 223, 329). Petitioner did pursue a direct appeal, but his conviction and sentence were upheld (docket nos. 374, 375). He then filed his motion under 2255.

**CLAIMS**

The claims raised in Petitioner's original motion are quite straightforward. He contends that the sentencing judge erred in applying a two-level enhancement under the United States Sentencing Guidelines based on Petitioner's possession of a firearm in connection with the offense. He also claims that appellate counsel was ineffective for failing to raise this point on appeal. In his first motion to amend, he adds claims related to the fact that the prosecutor who handled his case had his license to practice law suspended at the time he prosecuted Petitioner. His second amended motion expands upon these claims and seeks to add an "independent action" based upon the former prosecutor's "fraud on the court."

## DISCUSSION

Before discussing the merits of Petitioner's claims, the court will briefly discuss Petitioner's motion to seal and motions to amend. Petitioner seeks to seal documents related to his claims concerning the actions of the former prosecutor. Petitioner's reason for this is that, if he is correct that the prosecutor's actions entitle him to relief, "the failure to seal the documents containing the arguments relating to the fraud could have wide reaching potential to open the door to innumerable others who may be similarly situated" (docket no. 426 at 1). In other words, Petitioner reasons that the prosecutor engaged in wrongdoing, that Petitioner's rights were violated by this, that many other persons' rights were also violated, and that the court hid the fact that other persons might be entitled to relief. The suggestion that the court actively covered up fraud or hid potential violations of the rights of criminal defendants for any reason, much less for nothing more than to spare itself the burden of having these defendants file claims, is offensive to the court and to the administration of justice generally.[2] Petitioner's motion to seal is denied, and no documents related to his 2255 motion or amended motions are to be treated or marked as sealed.

---

[2] In fact, rather than hide the situation, the court actually sent notifications of the matter to members of the defense bar. These letters, along with media coverage, have led a number of other defendants to file claims similar to those raised by Petitioner. These claims are being handled by the court in due course as part of its normal duties.

As for the motions to amend, the claims in the first motion to amend have already been addressed by Respondent, while the arguments that Petitioner seeks to add in his second motion to amend pertain to matters already raised in his first motion to amend. Therefore, the motions to amend will be granted; and the arguments will be considered along with the arguments Petitioner raised in his original 2255 motion.

**Firearm Enhancement Claims**

Turning now to the merits of Petitioner's claims, his first two claims are that the sentencing judge erred in applying a two-level firearm enhancement under USSG § 2D1.1(b)(1) and that appellate counsel was ineffective for not raising this claim on appeal. Where a defendant possesses a firearm and commits a drug offense, that two-level increase applies "unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1 comment. (n.3). A firearm is connected to the offense if "the firearm has 'some purpose or effect with respect to the drug trafficking crime[.] . . . [T]he gun at least must "facilitate or have the potential of facilitating," the drug trafficking offense.'" *United States v. Lipford*, 203 F.3d 259, 266 (4th Cir. 2000) (quoting *Smith v. United States*, 508 U.S. 223, 237 (1993)). The presence of the firearm cannot be accidental or coincidental, but it is enough if the firearm is present and its presence might embolden or protect the defendant during the crime. *Id.*

Here, counsel objected to the application of the two-level enhancement; and a sentencing hearing was held in which two law enforcement officers testified for the government; and Petitioner's father testified on his behalf. Afterward, the sentencing judge found that:

> SBI agents found a number of firearms in the home located at 3501 Flat Swamp Road -- 3055 Flat Swamp Road. Those firearms included a number of long guns, rifles, as well as a .45 caliber pistol.
>
> While the bulk of the firearms were found in the master bedroom -- or while many of the firearms were found in the master bedroom, which Mr. Franklin senior has testified was his bedroom, at least one firearm, that is, the lever action rifle, was found in the living room area of the home. Mr. Franklin described his ownership of the firearms, but acknowledged during the testimony that his son, Billy Ray Franklin, did have access to the firearms -- from my interpretation of his comment was pretty much any time he wanted or needed them.
>
> Based on the testimony -- based on the location of the firearms as well as the testimony offered by Mr. Franklin, the Court finds that Billy Ray Franklin did, in fact, possess firearms during the time period of the conspiracy -- or during the time period of the criminal activity alleged in the indictment, that is, from 2005 up through January 2008.
>
> I will note specifically that the Court has considered possession in terms of being sole or joint and actual or constructive. And here during the period of a conspiracy, the Court finds that the firearms were at a minimum jointly and constructively possessed by Billy Ray Franklin.
>
> Furthermore, although this is not a firearms case that involves the usual -- what the Court will call the typical evidence where a firearm is found in a bedroom or within a house in close proximity to stored drugs, the evidence in the case suggests or -- and the Court finds that the manufacture of methamphetamine was taking place at 2901 Flat Swamp Road around a mobile home type facility, which was back, for lack of a better way to describe it, behind but in fairly close proximity to

> the home that was occupied by Billy Ray Franklin, his brother, his parents, and Lisa Kinley.
>
> The Court finds that this manufacture of methamphetamine was conducted in a lab that is not a lab that is one that could be easily transported like a number of labs are. So the proximity to the -- so the proximity of the firearms in relation to the substantial lab and manufacturing activity that were taking place on the adjoining property, the Court finds as some evidence contradictory to the defendant's assertion that it was -- or the defendant's -- part of the defendant's argument that it is clearly improbable that the firearms were related to the criminal activity.
>
> Specifically, the Court finds that the defendant did possess the firearms during the commission of the offense charged in Count I, and the Court further finds that it is not clearly improbable that the firearms bore some relationship to the criminal activity, even if simply limited to the protection--potential protection of the lab.
>
> I will note that there is no evidence, and the Court's not finding that the defendant, in fact, carried or used a firearm during the commission of any criminal activity alleged in this case. The Court finds that the plus two is properly applied.

(docket no. 353 at 49-51.)

As demonstrated by the passage just set out, the issue now raised by Petitioner was raised and fully litigated at sentencing. The sentencing judge applied the proper standards in considering whether or not to apply the two-level increase and determined, with a strong supporting basis in the facts produced at the hearing, that it did apply. Petitioner has not shown that this was error in any way. His first claim for relief should be denied.

Petitioner's second claim for relief alleges that his attorney erred on appeal in failing to challenge the two-level firearm increase even though Petitioner asked him

to do so.  In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations.  *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing, a habeas petitioner must come forward with some evidence that the claim might have merit), *abrog'n on other grounds recog'd, Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999).  A petitioner bears the burden of affirmatively showing deficient performance.  *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994).  To establish prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  Ineffective appellate assistance claims are judged using the *Strickland* test set out previously.  *See Lawrence v. Branker*, 517 F.3d 700, 708-09 (4th Cir. 2008).  Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant.  *Jones v. Barnes*, 463 U.S. 745 (1983); *see also Smith v. Murray*, 477 U.S. 527 (1986); *Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal").  Winnowing out weaker arguments to press forward with more important points is part of effective appellate advocacy.  *Jones*, 463 U.S. at 751-52.

Prejudice can be shown by demonstrating that "'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Bell v. Jarvis*, 236 F.3d 149, 180 (4th Cir. 2000) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

Here, as already explained, the analysis and application of the two-level increase by the sentencing judge was correct. There was no reasonable prospect of success for this claim on appeal. Therefore, Petitioner cannot show that counsel erred in deciding not to raise it or that he was prejudiced by the decision. This claim should also be denied.

**Prosecutorial Licensing Claims**

Petitioner's next set of claims is based on the fact that the Assistant United States Attorney who prosecuted his case, David P. Folmar, Jr., was not properly licensed to practice law at the time. In fact, his license was suspended for failure to keep current with the Continuing Legal Education requirements of the North Carolina State Bar. Based on these facts, Petitioner claims in his amended motions that his conviction and sentence should be vacated because: (1) the situation violated his rights generally, (2) Folmar's presence before the grand jury constituted the presence of an unauthorized person in violation of Fed. R. Crim. P. 6, (3) Folmar's signing of the indictment did not count as the signing of a government attorney under Fed. R. Crim. P. 7, (4) Folmar lacked authority to enter into a valid plea agreement, (5) Petitioner's guilty plea was not knowing because he did not realize that the

indictment and plea agreement were invalid, (6) Folmar defrauded the court by representing himself as a licensed government attorney, (7) Folmar's suspended license created a "conflict of interest" because he was forced to hide it, (8) Folmar's actions constituted prosecutorial misconduct, and (9) counsel provided ineffective assistance of counsel in not discovering Folmar's licensing issues and many violations of Petitioner's rights.

As far as Petitioner's general claim that his rights were violated, most courts facing the dilemma have ruled that a defendant does not have a constitutional right to a properly licensed prosecutor, that the prosecution of a case by an unlicensed or improperly licensed prosecutor does not automatically violate a defendant's rights, and/or that a defendant must show some sort of prejudice in order to challenge his conviction. *Hamilton v. Roehrich*, 628 F. Supp. 2d 1033, 1050-54 (D. Minn. 2009); *Munoz v. Keane*, 777 F. Supp. 282, 284-87 (S.D.N.Y. 1991), *aff'd sub nom. Linares v. Senkowski*, 964 F.2d 1295 (2$^d$ Cir. 1992); *People v. Carter*, 77 N.Y.2d 95, 106-07, 566 N.E.2d 119, 123-24 (1990); *Ali v. Minnesota*, Civil No. 09-1389, 2010 WL 145280, at *5 (D. Minn. Jan. 8, 2010). The Fourth Circuit Court of Appeals has also made a statement to this effect. *See United States v. McNeill*, 389 Fed. Appx. 233, 235 (4th Cir. 2010) (rejecting a claim on direct appeal based on Folmar's lack of a proper license without discussion due to failure to show prejudice). At least one court has held that a prosecution pursued by a prosecutor without a proper license is still valid because, although not qualified for her job as a prosecutor, she was

nevertheless given the job by the government. This made her a "de facto officer" whose acts on behalf of the government were valid. *Parker v. United States*, Nos. 4:98CR00236 GH, 4:03CV00058 GH, 2006 WL 2597770, at *13-15 (E.D. Ark. Sept. 8, 2006); *United States v. Deaton*, Nos. 4:99CR87GH, 4:04CV2252GH, 2005 WL 1922877, at *3-5 (E.D. Ark. Aug. 9, 2005). There is a decision from Illinois in which a state court held that prosecutions by an unlicensed prosecutor are per se invalid. *People v. Dunson*, 316 Ill. App. 3d 760, 763-70, 737 N.E.2d 699, 702-06 (2000). Be that as it may, however, the court in *Dunson* relied solely on state, not federal, law and declined to decide whether or not a due process violation had occurred. No case of which the court is aware has held that there is a federal constitutional right to a properly licensed prosecutor.

This court agrees with the cases, concluding that there is no general federal right to a properly licensed prosecutor and that a defendant or petitioner must ordinarily show prejudice from the lack of licensing in order to raise a claim based on a prosecutor's licensing deficiencies. Petitioner points to no such prejudice in the case at bar beyond his other, more specific claims, and none is apparent. The specific claims will be discussed, but Petitioner's general claim that his rights were violated by Folmar's suspended license should be denied.

Turning now to the specific claims, one of them is that Folmar's presence before the grand jury in Petitioner's case violated Fed. R. Crim. P. 6(d)(1). That rule limits persons appearing before the grand jury while it is in session to "attorneys for

the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device." Petitioner argues that Folmar's licensing status meant that he was not a proper "attorney[] for the government" under that Rule.

Purely for the purposes of addressing this claim, the court assumes that this is correct. The question then is whether Folmar's "unauthorized" presence in the grand jury proceedings entitles Petitioner to any relief. Petitioner contends that the indictment is invalid and that the case against him must be dismissed. Nevertheless, under *United States v. Mechanik*, 475 U.S. 66 (1986), dismissal of the indictment is not automatic when an unauthorized person is present. Rather, the question is subject to harmless error analysis. Petitioner must still show that "'the violation substantially influenced the grand jury's decision to indict' or [that] there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quoting *Mechanik*, 475 U.S. at 78 (O'Connor, J. concurring)).

It is true that Petitioner pled guilty, while *Mechanik* involved a case where a petit jury had later rendered a guilty verdict. Part of the stated rationale for the Supreme Court's decision was that the petit jury's verdict rendered harmless any errors committed in the charging decision. *Mechanik*, 475 U.S. at 73. The rule against unauthorized persons being present before the grand jury was premised on preventing the indictment of innocent persons. This is not a concern where a person

is later found guilty after trial because "we know, as surely as courts 'know' anything, that the convicted defendant is not a member of the class of beneficiaries of the rule." *United States v. Fountain*, 840 F.2d 509, 515 (7th Cir. 1988) (discussing *Mechanik*). Still, for the same reason, the harmless error standard of *Mechanik* also applies after the entry of a guilty plea. *See United States v. Hefner*, 842 F.2d 731, 733 (4th Cir. 1988) (applying harmless error standard after entry of conditional guilty plea).

Here, the prosecutor was not properly licensed and was, therefore, a potentially "unauthorized" person in the grand jury room. Still, Petitioner has not shown that Folmar's lack of a valid license actually affected the decision to indict or the presentation to the grand jury at all. Put another way, had Folmar been properly licensed, the presentation of evidence and the decision to indict would have been the same. Likewise, there is no indication of a different result if Folmar's lack of license had been discovered prior to the presentation and another Assistant United States Attorney had presented the evidence. Folmar's "unauthorized" presence did not affect matters one way or another. This claim should be denied.

Petitioner likewise contends that Folmar's signature on the indictment itself did not meet the requirement of Fed. R. Civ. P. 7(c)(1) that the indictment "must be signed by an attorney for the government." Again, assuming only for the sake of argument that Petitioner is correct in his assertion that Folmar could not satisfy this requirement based on the suspension of his law license, the claim fails. A review of

the superseding indictment in Petitioner's case reveals that it was signed not only by Folmar, but also by then United States Attorney Anna Mills Wagoner (docket no. 109 at 11). Petitioner makes no argument that she was not an "attorney for the government" within the meaning of Rule 7. Therefore, his indictment was properly signed by at least one government attorney. This claim should also be denied.

Petitioner's next claim is that Folmar did not have authority to negotiate and enter into a valid plea agreement on behalf of the government. He adds that Folmar was not an agent who could enter into a binding agreement on behalf of the government. This is incorrect. Although Folmar's license was suspended and the government would obviously not have allowed him to continue to prosecute cases if it had known this fact, it did not know it and did give him the authority to prosecute cases and enter plea bargains on its behalf. Further, even if the court were to hold that Folmar was not authorized to enter valid agreements on behalf of the government, this would not void Petitioner's plea agreement. "The law governing the interpretation of plea agreements is an 'amalgam of constitutional, supervisory, and private [contract] law concerns.'" *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004) (quoting *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986). And contract law principles are dispositive in most cases. *Id.* Turning to contract law, an agreement entered into by an unauthorized agent is a *voidable*, not *void*, agreement. The government can choose to ratify the agreement by continuing to abide by it. *Perri v. United States*, 53 Fed. Cl. 381, 401-02 (2002), *aff'd* 340 F.3d 1337 (Fed. Cir.

2003). Here, the government did continue with the agreement. Petitioner does not even allege that he did not receive all that he was due under the plea agreement. At no point has the government sought to void the agreement or not followed its terms. Therefore, whether or not Folmar is treated as an authorized agent of the government, the plea agreement was valid and remains so.

Petitioner also asserts that his plea was not knowing and voluntary because he was not aware of Folmar's suspension or that the indictment and plea agreement were invalid. As just explained, the indictment and plea agreement were valid; therefore, there is no problem with Petitioner's guilty plea. This claim should also be denied.

Petitioner's next three claims are that Folmar's continuing to act as a prosecutor even though he did not have a valid license amounted to a "fraud on the court," created a "conflict of interest" which may have caused Folmar to handle the case differently in order to hide the suspension of his license, and amounted to prosecutorial misconduct. Again, Petitioner is not entitled to relief. To the extent that Folmar lied to or defrauded the court, that is a matter between Folmar and the court. Unless Petitioner could show that he was harmed or prejudiced in some manner (and he has not) then his conviction and sentence are not affected.

As for the "conflict of interest," even where defense counsel is involved in an alleged conflict, a petitioner must show that representation of counsel is adversely affected by an actual conflict of interest. *United States v. Tatum*, 943 F.2d 370, 375

(4th Cir. 1991); *see Mickens v. Taylor,* 535 U.S. 162, 172 n.5 (2002) ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."). Courts have held that to show an adverse effect, a petitioner must demonstrate that some plausible defense strategy or tactic might have been pursued, but was not because of the conflict. *See Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996) (citing cases); *see also Patterson v. Virginia Dept. of Corrections*, No. 96-7438, 1998 WL 957464 (4th Cir. Sept. 22, 1998) (unpublished) (adopting this approach). If a petitioner makes this showing, prejudice is then presumed. *Mickens*, 535 U.S. at 172 n.5. Applying similar standards to the present case, Petitioner would have to show that the alleged "conflict of interest" affected Folmar's handling of the case in a way that harmed Petitioner. Again, he has not done so.

Prosecutorial misconduct is no different. In order to prevail on his misconduct claim, Petitioner would need to show the prejudice that he has been utterly incapable of showing. He has produced no evidence, as opposed to speculation, that his case would have proceeded differently if Folmar had been properly licensed or if a different properly licensed prosecutor had handled the matter. The prosecutorial misconduct claim fails as well.

Finally, Petitioner contends that counsel provided ineffective assistance of counsel by failing to discover Folmar's lack of a license and failing to inform Petitioner that the indictment and plea agreement were invalid. This claim is judged

-15-

by the *Strickland* standards set out previously. The lack of a valid license by a prosecutor is a rare circumstance that a defense attorney would not ordinarily be expected to investigate. There is also no indication that defense counsel in this case had any particular knowledge which should have caused him to investigate Folmar's licensing status. Defense counsel did not perform improperly by not looking into the matter. Further, Petitioner was not prejudiced by counsel's failure to investigate. Had counsel investigated and discovered the licensing problem, it would not have changed the outcome of the case. As already explained, there was no problem with the indictment or plea agreement in the case. Upon disclosure of the licensing issue, Folmar would simply have been replaced by a different prosecutor; and the matter would have continued just as it did. Petitioner cannot demonstrate either the error or the prejudice to support a finding of ineffective assistance of counsel.

In the end, Petitioner has spent approximately seventy typed pages discussing and arguing Folmar's behavior from every possible angle and raising all available claims. The result of the matter can be summed up in much less space. No matter how Petitioner presents his claim, whether it is based on the Constitution, relies on the Federal Rules, or is titled as an "independent action," Petitioner must show that Folmar's licensing problem somehow had a negative impact on his case. He has not. Despite much unsupported speculation, Petitioner has pointed to nothing in his case that was affected or changed by Folmar's lack of a valid license. To be sure,

he points to nothing that would justify vacating his conviction or sentence. His claims should be denied in their entirety.[3]

**IT IS THEREFORE ORDERED** that Petitioner's motions to amend his 2255 motion (docket nos. 400, 425) are **GRANTED**, that his motion to seal (docket no. 426) is **DENIED**, and that documents currently marked as sealed because of that pending motion (docket nos. 427 and 428) no longer be treated as sealed.

**IT IS RECOMMENDED** that Petitioner's motion to vacate, set aside or correct sentence (docket no. 380), as amended, be **DENIED** and that Judgment be entered dismissing this action.

                                                  _/s/ Wallace W. Dixon_
                                                  WALLACE W. DIXON
                                                  United States Magistrate Judge

Durham, N.C.
May 3, 2011

---

[3] The court has attempted to respond to all of the many variations of Petitioner's claims. To the extent that any have not been specifically discussed, they should still be denied for essentially the reasons already set out.